NOORIA NOOR, Appellant, *v.* JOSHUA AGSALUD, Director of the Department of Labor and Industrial Relations, State of Hawaii, and THE QUEEN'S MEDICAL CENTER, Appellees

NO. 7420

CIVIL NO. 55046

OCTOBER 20, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* This is an appeal from an order of the circuit court upholding a referee's determination that appellant was disqualified from receiving unemployment benefits under § 383-30(1) of the Hawaii Employment Security Law because she left her work voluntarily without good cause. We affirm.

Appellant was employed as a psychological aide and psychological assistant at the Queen's Medical Center from October, 1973 to November 13, 1976, at which time she voluntarily left her job. The referee found that the nature of her work was extremely stressful and was especially stressful for the appellant because of her own personality patterns. He concluded that her continued employment in the same work environment could have resulted in damage to her physical and mental health. He nevertheless concluded that she had left work without good cause since she neither sought counselling

which was available within the employer's organization nor a transfer to other positions in the organization which were open and for which she was qualified.

Hawaii Revised Statute (HRS) § 383-30(1) as of the date of appellant's leaving her employment provided as follows:

Voluntary Separation. For any week in which he has left his work voluntarily without good cause, and continuing until he has, subsequent to the week in which the voluntary separation occurred, been employed for at least five consecutive weeks of employment.

On appeal to the circuit court, the standard of review is as set forth in HRS § 91-14(g), which provides as follows:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Obviously, grounds (1), (2), (3) and (6) are inapplicable in this case. In view of the record, the circuit court could not set aside the referee's findings of fact since, on the record, they were demonstrably not "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; . . ." Accordingly, the question presented here is whether the decree below and the decision of the referee are "affected by other error of law".

It is significant that prior to the amendment to HRS § 383-30(1) by Act 157 of the Session Laws of 1976 which went into effect July 15, 1976, that subsection disqualified an employee for benefits for not less than three, nor more than eight consecutive weeks of un-

employment if he had left work voluntarily without good cause. The committee reports with respect to the 1976 Act, make clear that the limitation on disqualification was deliberately removed by the legislature. As was said in Senate Committee Report 352-76:

> Under the present law, an individual disqualified for any of the aforementioned reasons may not draw benefits for three to eight weeks; however, after serving his disqualification period, the individual may then draw his full benefit entitlement, if he is otherwise eligible to do so. The intent of the law is to pay benefits to workers who are involuntarily unemployed. Under the proposed amendment, an individual who caused his own unemployment would not draw benefits until he has amply demonstrated his attachment to the labor force by working subsequent to his voluntary unemployment.

S. Stand. Comm. Rep. No. 352 on S. B. 2326, *reprinted in Senate Journal,* 1036-1037 (1976). The question here is whether an employee is entitled to simply quit a stressful job which threatens health without seeking relief such as a change of employment within the employer's structure.

The case of *National Tire of Hawaii, Ltd. v. Kauffman,* 58 Haw. 265, 567 P.2d 1233 (1977) is not in point, for there, although the circumstances of the employee leaving the employment were somewhat similar, it was conceded that the employee did not leave for good cause and accordingly, that he was disqualified under § 383-30(1), as it then provided. However, that section, as then written, merely provided for a disqualification of two to seven weeks. The issue in *National Tire* was whether or not there was a disqualification under § 383-30(3). In this case, the referee and the court below found no disqualification under that section.

We think it clear that the employee has the burden of establishing that the voluntary termination was with good cause.[1] Thus, it has been stated:

> Once the separation has been termed a voluntary leaving on the basis of circumstances surrounding the departure, the "good cause" exception must be explored. In the case of voluntary

---

[1] Section 383-30(1), HRS, differs from § 383-30(3) in this respect.

quitting, the employee has the burden of establishing that his leaving was with good cause.

D. Packard, "Unemployment Without Fault; Disqualifications for Unemployment Insurance Benefits", 17 VILL. L. REV. 635, 639 (1972). One month and three days after the effective date of appellant's leaving her job, Rule 5(c) of Regulation II of the Rules and Regulations relating to the Hawaii Employment Security Law, Chapter 383, Hawaii Revised Statutes, became effective. It provided:

> Generally a leaving of work is considered to be for good cause where it is for a real, substantial or compelling reason, or a reason which would cause a reasonable and prudent worker, genuinely and sincerely desirous of maintaining employment to take similar action. Such a worker is expected to try reasonable alternatives to his problems before terminating his employment.

While that regulation was not effective at the time appellant voluntarily left her job, we think it is a common sense construction of the term "good cause" as used in that statute and worked no change in the law. We hold that an employee, even prior to the adoption of that regulation, had the duty to try reasonable alternatives for the solution of his or her problem within the employer's organization prior to terminating employment. Reasonable alternatives would include at least consulting the employer and attempting to find some means of solution to the problems. Here, the record is clear that no such attempt was made by the appellant. Accordingly, we affirm the judgment below.

*Charles S. Lotsof* for appellant.

*Ernest C. Moore, III (Torkildson, Katz, Jossem & Loden* of counsel) for appellee The Queen's Medical Center.

*Robin K. Campaniano,* Deputy Attorney General, for appellee Department of Labor & Industrial Relations.